FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### Jasper Division

00 MAR 13  PM 12: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEWAREN BOYD,                          )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )     CV-99-P-0292-J
                                       )
ALABAMA COOPERATIVE                    )
EXTENSION SYSTEM, et al.,              )
                                       )
          Defendants.                  )

ENTERED
MAR 1 3 2000

## Opinion

Before the court is a Motion for Summary Judgment filed by Defendant Alabama Cooperative Extension System ("ACES") on October 29, 1999. The motion was taken under submission following the March 3, 2000 motion docket. For the reasons expressed below, Defendant's motion is due to be granted as to all of Plaintiff's claims.

### I. Facts

In January 1994, Plaintiff Dewaren Boyd, a black male, began his employment with Defendant ACES as an Agent in its Walker County Extension Office. Plaintiff's immediate supervisor throughout his employment with the Defendant was Shirley Whitten, a white female who served as the County Agent Coordinator. Plaintiff's primary area of responsibility was horticulture, although he, like the other agents in the office, was expected to assist in other areas and provide support to the other agents in the office as needed.

In March 1996, Ms. Whitten received a letter from Judy Cox, a white female with whom Plaintiff was romantically involved. Cox's letter made allegations that Plaintiff inflicted physical, sexual, and emotional abuse upon her. Without informing the Plaintiff that she had received the letter, Whitten forwarded the letter to P.W. Brown, a black male who at the time served as the Interim District Agent for Walker County and Whitten's immediate supervisor.[1] Thereafter, on March 28, 1996, Plaintiff was informed by Brown that he was being placed on administrative leave with pay while ACES administration investigated Cox's complaints against him. Plaintiff was on paid leave until May 6, 1996, when he returned to his duties in the Walker County Extension office.

---

[1]Whitten also made various complaints that she she was concerned for the safety and emotional well-being of the staff due to Plaintiff's volatile nature.



In February 1997, Whitten and Dr. Rebecca Dollman, the District Extension Coordinator for Walker County, met with Plaintiff and reviewed his 1996 Performance Appraisal. Plaintiff received an overall rating of "Conditional" on his 1996 appraisal.[2] Plaintiff disagreed with Whitten's and Dollman's assessment of his performance and appealed the rating. Dr. Chinella Henderson, a black female who served as the Interim Associate Director of Urban and Non-Traditional Programs, and Dr. Samuel Fowler, a white male who was the Interim Associate Director for Rural or Traditional Programs, handled Plaintiff's appeal at the first level. Plaintiff was allowed to submit documentation to support his position that his performance scores should have been higher, and Drs. Henderson and Fowler had a conference with the Plaintiff to discuss and review the positions of both Boyd and his supervisors. Thereafter, Henderson and Fowler issued a written report summarizing the appeal conference and affirming Plaintiff's rating of "Conditional" overall and in each separate category. Henderson and Fowler also recommended in their report that Whitten and Dollman be required to develop a special six month corrective action work plan for Plaintiff and that he be re-evaluated pursuant to the plan at the end of the six month time frame. Plaintiff then made his final appeal to Dr. Stephen B. Jones, the Director of ACES. After conducting a meeting with Plaintiff and Dr. James Smith, a black male who served as the ACES Associate Director of Human Resources, Dr. Jones also upheld the "Conditional" rating of Plaintiff's 1996 work performance.

Around May of 1997, Plaintiff, Whitten, and two other Walker County staff members, Cherry Hovatter and Sharron Mitchell, were traveling together to Cullman, Alabama for an Extension meeting. Whitten drove her car to the meeting. Cherry Hovatter brought a Lewis Grizzard audio tape entitled, "If I Ever Get Back to Georgia I'm Gonna Nail My Feet to the Ground," along on the trip. The tape, which was played during the course of the trip, contained the word "nigger." The word is used on the tape to describe a third party's racist conduct that the speaker, Lewis Grizzard, finds reprehensible. Furthermore, both Whitten and Hovatter testified that they were unaware that the word "nigger" was contained on the tape before the tape was played. Plaintiff never complained to anyone about this tape until June of 1997, when he informed Dr. Jones and Dr. Smith during a conference related to the appeal of his 1996 performance rating. Dr. Jones admits that there was no follow up done with respect to the complaints made by Plaintiff about the tape.

Around August 5, 1997, Dr. Dollman and Whitten met with Plaintiff and gave him a written work plan, which began Plaintiff's six month appraisal period. According to Whitten and Dollman, at the end of the six month appraisal cycle, Plaintiff's work performance did not meet the minimum goals and standards set out in the plan. Therefore, in February of 1998, Whitten and Dr. Dollman again rated Plaintiff's performance as "Conditional" and further recommended that "adverse administrative action" be taken against Boyd. Rather that terminate Plaintiff's employment, Dr. Jones decided to transfer the Plaintiff to Barbour County.[3] Plaintiff was thereafter informed that he

---

[2]According to ACES' *Performance Appraisal Handbook,* "[a] conditional rating means that the staff member failed to meet job performance standards and requirements ...."

[3]In 1997, ACES implemented a new staffing plan for its county offices. In order to implement the plan, ACES began offering qualified employees $5000 as an inducement to voluntarily transfer from overstaffed counties to ACES offices in counties that were understaffed. Plaintiff was not eligible for the $5000 relocation incentive because the

was being reassigned to Barbour County and that his first day to report to work would be April 6, 1998. On April 3, 1998, however, Boyd informed the District Director that he would not report to work in Barbour County. When Plaintiff did not show up for work in Barbour County on April 6, 1998, he was terminated for insubordination or failure to accept the transfer.

On May 18, 1998 Plaintiff filed a charge of Discrimination with the EEOC. On February 8, 1999, Plaintiff filed this action against ACES alleging that he was subjected to a racially hostile environment, retaliation, and that he was wrongfully discharged from his employment as a County Extension Agent. Plaintiff also alleges that his former supervisor, Whitten, unlawfully interfered with his business and contractual relationship with ACES. On October 29, 1999, Defendant ACES filed the Motion for Summary Judgment that is the subject of this opinion.

## II. Claims

### A. Plaintiff's Hostile Environment Claim

In Counts I and IV of his complaint, Plaintiff alleges that he was subjected to a racially hostile work environment while employed by ACES. This hostile environment claim is predicated on the following events: his placement on leave pending the investigation relating to the allegations of Judy Cox; the bad performance appraisal he received in February of 1997; the playing of the Lewis Grizzard tape in May of 1997; and an alleged statement made to Judy Cox by the part-time office secretary, Maggie Brown, that the KKK would get the Plaintiff.[4]

In order to state a claim for relief under Title VII or Section 1981 for discrimination based upon a theory of hostile work environment, a plaintiff must prove that there was conduct "severe [and] pervasive enough to create an objectively hostile or abusive work environment ...." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Relevant factors in determining whether an unlawful, hostile environment exists include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. Furthermore, the Eleventh Circuit has held that a plaintiff such as Boyd may establish a prima facie case of hostile work environment based upon race by showing that (1) he belongs to a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition or privilege of employment; and (5) respondeat superior. *Bivens v. Jeffers Vet Supply,* 873 F. Supp. 1500, 1507 (N.D. Ala. 1994)(citing *Henson v. City of Dundee,* 682 F.2d 897, 903-05 (11th Cir. 1982).

---

Walker County office was not understaffed at the time of his transfer and because his transfer was not related to implementation of ACES' new staffing plan.

[4]Defendant argues that Plaintiff's hostile environment claim is untimely (both under Title VII's 180 day requirement and Section 1981's two year statute of limitations) with respect to certain incidents relied upon by Plaintiff. However, because the court finds that Defendant is entitled to summary judgment on Plaintiff's hostile environment claim based upon the merits, the timeliness issues are not addressed in this opinion.

To the extent that Plaintiff's hostile environment claim is based upon his placement on administrative leave and his bad performance appraisal, ACES is entitled to summary judgment because Plaintiff has not established that this alleged harassment was based upon race. Plaintiff's performance appraisal, which was completed by Shirley Whitten *and* Dr. Rebecca Dollman, noted several deficiencies in Boyd's job performance. Moreover, at each level of Plaintiff's appeal of the 1996 appraisal, the reviewers concluded that the "conditional" rating which Plaintiff received was justified. At least one of the three individuals who reviewed Plaintiff's evaluation through the appeals process was an African American. Similarly, the decision to place the Plaintiff on administrative leave was made by P.W. Brown, also an African American. These facts, coupled with the fact that Plaintiff has offered no admissible evidence linking these actions by Defendant with his race, lead to the conclusion that Plaintiff cannot establish a prima facie case of hostile work environment based upon these two incidents.

To the extent that Plaintiff's hostile environment claim is based upon the playing of the Lewis Grizzard tape and the alleged statement made by Maggie Brown, Defendant is also entitled to summary judgment. With respect to the use of the word "nigger" on the Lewis Grizzard tape, Plaintiff cannot establish that this mere offensive utterance was severe and pervasive enough to create an objectively hostile working environment. *See Harris,* 510 U.S. at 23. While the threatening nature of the alleged statement by Maggie Brown makes it better evidence of an objectively hostile environment, there is no evidence that Brown, a part-time secretary, had any supervisory responsibility over Boyd and no evidence that anyone in ACES administration knew about Brown's alleged statements. *See Splunge v. Shoney's, Inc.,* 97 F.3d 488, 490 (11th Cir. 1996(when an employee seeks to impose hostile environment liability on the part of an employer, the employee must prove that "the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action ...."). As such, Plaintiff cannot make out a prima facie case of a racially hostile work environment based upon these two alleged incidents.

B. Plaintiff's Retaliation Claim

In Counts II and V of Plaintiff's complaint, he alleges that he was retaliated against because he made complaints of race discrimination while employed by ACES. Specifically, Plaintiff bases his retaliation claim on the complaint which he made to Dr. Jones that Whitten played racial tapes during a car ride to Cullman, Alabama. Plaintiff alleges that the retaliation took the form of a special plan of work being set up for him, Whitten recommending that he be terminated, a transfer of the Plaintiff to Barbour County, and a refusal by ACES to pay the Plaintiff the $5000 relocation fee that other transferred agents received.

To establish a prima facie case of retaliation, Plaintiff must show "(1) that he engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." *Coutu v. Martin County Bd. of County Com'rs,* 47 F.3d 1068, 1074 (11th Cir. 1995).[5] If the Plaintiff meets this burden, the

---

[5]Plaintiff may seek to rely upon the playing of the Lewis Grizzard tape as direct evidence of discrimination; however, the use of the word "nigger" on the tape was, at best, a stray remark that was unrelated to the decision making

burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1375 (11th Cir. 1996). If Defendant meets this "exceedingly light" burden, the burden shifts back to the Plaintiff, who must then establish that the employer's articulated reasons were pretextual in order to survive summary judgment. *Id.*

In the present case, Plaintiff cannot make out a prima facie case of retaliation because he cannot establish the existence of a "causal link" between the complaint made in June of 1997 and the subsequent alleged retaliatory conduct. Plaintiff complained for the first time about Whitten playing the Lewis Grizzard tape during the final stage of the appeal of his 1996 performance appraisal.[6] These complaints were made during a conference between the Plaintiff, Dr. Steve Jones, and Dr. James Smith. While Plaintiff alleges that he was placed on a special plan of work in retaliation for his complaints to Drs. Jones and Smith, the special plan of work was recommended for him in a May 12, 1997 report prepared by Dr. Chinella Henderson and Dr. Sam Fowler, almost two months before Plaintiff engaged in the alleged protected activity. Additionally, ACES was required to place Plaintiff on a special plan of work by ACES' *Performance Appraisal Handbook,* a publication which also pre-dated Plaintiff's complaints. Therefore, to the extent that Plaintiff's retaliation claim is based upon his placement on a corrective action work plan, Plaintiff cannot establish the third element of a prima facie case, making summary judgment appropriate.

Plaintiff also fails to establish the third element of his prima facie retaliation case regarding Shirley Whitten's recommendation that he be terminated. Plaintiff has offered no evidence which links the recommendation to his complaints about Whitten. Plaintiff testified that he never complained to Whitten about the Grizzard tape and that neither Whitten nor Dollman even knew he had complained about the tape. Furthermore, Whitten testified that she never knew of any racial complaints that Plaintiff made about her until after the Plaintiff filed this lawsuit. As such, Plaintiff cannot establish that the adverse employment action that he suffered was causally related to his protected activity, and Defendant is entitled to summary judgment to the extent that Plaintiff's claim is based upon Whitten's recommendation to Jones.[7]

Similarly, Plaintiff has offered no evidence linking his June 1997 complaints about Shirley Whitten to Dr. Jones' decision in March of 1998 to transfer him. In fact, Dr. Jones rejected Whitten's and Dollman's recommendation to terminate the Plaintiff in favor of transferring him and giving him the opportunity to start over in a new working environment.[8] Furthermore, even

---

process itself. *See Standard v. A.B.E.L. Services,* 161 F.3d 1318, 1330 (11th Cir. 1998).

[6]While Plaintiff made other vague complaints to Jones and Smith about the way that Shirley Whitten treated him, his complaint about the tape was the only complaint that referenced race.

[7]It is also not clear that Whitten's recommendation that Boyd be terminated resulted in adverse employment action because the recommendation was not acted on. Rather, Dr. Jones rejected both Whitten's and Dollman's recommendation in favor of transferring the Plaintiff to Barbour County.

[8]In a memo written to the file regarding the Walker County situation, Dr. Jones explained that part of the reason that he decided to transfer Plaintiff rather than terminate him was because "he [was] convinced that terminating Mr.

assuming that Plaintiff could show such a causal link, he has not offered sufficient evidence that ACES' legitimate, nondiscriminatory reason for transferring the Plaintiff was pretextual.    Aside from the timing of Plaintiff's transfer, the only possible pretext evidence that Plaintiff has offered is in the form of ACES memoranda that make reference to the poor working relationship that existed between the Plaintiff and Shirley Whitten and refer to a few non-ACES employees that believe Plaintiff was a fine horticulturist.  In addition, Plaintiff's transfer came a full nine months after his complaints about Whitten playing the Lewis Grizzard tape.  Therefore, because this evidence is insufficient to establish that Defendant's articulated reason was pretextual, Defendant is entitled to summary judgment in this case.[9]

C.  Plaintiff's Termination Claim

In Counts III and VI of Plaintiff's complaint, he alleges that he was wrongfully discharged because of his race.  To establish a prima facie case of discrimination based on his termination, Plaintiff must show that (1) he is a member of a protected class; (2) that he was subjected to adverse employment action; (3) that similarly situated employees outside the protected class were treated more favorably; and (4) that he was qualified to do the job.  *Walker v. Mortham,* 158 F.3d 1177, 1187 (11th Cir. 1998).  If the Plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1375 (11th Cir. 1996).  Once the defendant has articulated such a reason, the burden shifts back to the Plaintiff, who must then establish that the employer's articulated reasons were pretextual.  *Id.*

In the present case, Plaintiff cannot make out a prima facie case based upon his termination because he not offered evidence that he was replaced by a white person, or that any white person similarly situated refused a transfer and was not terminated.  Nevertheless, even assuming that Plaintiff could make out a prima facie case of race discrimination with respect to the decision to terminate him, summary judgment is still appropriate on Plaintiff's termination claim.  ACES has articulated a legitimate, nondiscriminatory reason for Boyd's termination, his insubordination or refusal to accept the transfer.  Because Plaintiff has offered insufficient evidence that this reason was pretextual, ACES is entitled to summary judgment.

D.  Plaintiff's Claim for Wrongful Interference

In Count VII of Plaintiff's complaint, he alleges that Shirley Whitten wrongfully interfered with the business and contractual relationship between the Plaintiff and ACES.  To support a claim

---

Boyd would spark a potentially successful and very public court case involving the System and Auburn University." Nevertheless, the note also expresses that "[c]learly, Mr. Boyd's performance falls short of adequate, and his attitude is unacceptable."

[9]To the extent that Plaintiff seeks to base his retaliation claim on the denial of the relocation fee, Plaintiff cannot demonstrate that this alleged adverse action was causally related to his protected activity because the restrictions on the type of transfer that warranted a relocation incentive were set and published to all Extension employees prior to Boyd's complaints about Whitten.

based on the tort of intentional interference with business or contractual relations, the plaintiff must prove: (1) the existence of a contract or business relation; (2) defendant's knowledge of the relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff resulting from the interference. *Henderson v. Early,* 555 So. 2d 130, 131 (Ala. 1989). In order to successfully bring such an action against a co-employee, the plaintiff must also prove that the co-worker acted (1) outside the scope of her employment and (2) with actual malice. *Henderson,* 555 So. 2d at 132.

In the present case, Plaintiff has failed to submit sufficient evidence that Shirley Whitten was motivated by malice when she turned Judy Cox's letter over to P.W. Brown or continued her correspondence with Cox. Despite the possibility that Plaintiff may have exceeded her employer's expectations when she spoke on the telephone with Judy Cox concerning Ms. Cox's relationship with the Plaintiff, there is nothing in the record that indicates that her correspondence with Cox was based upon anything other than her concern about Plaintiff's behavior as it related to his job at ACES. Malice cannot be inferred simply from the fact that Whitten's communications with Cox indirectly affected her working relationship with the Plaintiff or led her to express concerns to management about the safety and emotional well-being of the ACES staff. As such, Defendant Shirley Whitten is entitled to summary judgment on Plaintiff's wrongful interference claim because Plaintiff has not offered sufficient evidence that Whitten acted with actual malice in this case.

## III. Conclusion

For the above reasons, Defendant's Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims.

Dated: _March 13_____, 2000

_Sam C. Pointer_
Judge Sam C. Pointer, Jr.

Service List:
>       Edward S. Allen
>       Lisa J. Sharp
>       Jeffrey W. Bennitt
>       Kenneth F. Gray, Jr.